Case 5:25-cr-00269-CLM-HNJ Document 30 Filed 02/04/26 Page 1 of 25

FILED
2026 Feb-17 PM 02:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED
2026 Feb-04 PM 04:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF ALABAMA

## NORTHEASTERN DIVISION

**UNITED STATES OF AMERICA** )
)
)
**v.** ) **5:25-cr-269-CLM-HNJ**
)
**JASON BRIAN SEAY** )

## PLEA AGREEMENT

The Government and the defendant, **JASON BRIAN SEAY,** hereby acknowledge the following plea agreement in this case:

## PLEA

The defendant agrees to (i) plead guilty to **COUNTS ONE through FIVE** of the Indictment filed in the above-numbered and -captioned matter; (ii) consent to forfeiture as described in section XII; (iii) pay restitution to all victims; and (iv) waive certain rights to direct appeal and collateral attack as outlined in section **IV** of this agreement. In exchange, the United States Attorney, acting on behalf of the Government and through the undersigned Assistant United States Attorney, agrees to recommend the disposition specified below, subject to the conditions in section **VII.**

Case 5:25-cr-00269-CLM-HNJ Document 30 Filed 02/04/26 Page 2 of 25

## TERMS OF THE AGREEMENT

### I. MAXIMUM PUNISHMENT

The defendant understands that the maximum statutory punishment that may be imposed for the crime of Sexual Exploitation of Children, in violation of 18 U.S.C. § 2251(a), as charged in **COUNTS ONE through FOUR**, is:

A. Imprisonment for not less than 15 years and not more than 30 years;

B. A fine of not more than $250,000;

C. Both A and B;

D. Supervised release of not less than 5 years to life;

E. Mandatory restitution in an amount to be determined by the Court:

F. Special Assessment Fee of $100.00 per count;

G. An AVAA Special Assessment Fee under 18 U.S.C. § 2259A of up to $50,000 per count;[1]

H. Register in accordance with the Sex Offender Registration and Notification Act; and

I. Forfeiture.

[1] 18 U.S.C. § 2259A(a)(3) provides that "[i]n addition to any other criminal penalty, restitution, or special assessment authorized by law, the court shall assess…" not more than $50,000 on any individual convicted of production of child pornography.

 Defendant's Initials JS

Case 5:25-cr-00269-CLM-HNJ Document 30 Filed 02/04/26 Page 3 of 25

The defendant understands that the maximum statutory punishment that may be imposed for Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) as charged in **COUNT FIVE** is:

A. Imprisonment for not more than 20 years;

B. A fine of not more than $250,000, or,

C. Both A and B;

D. Supervised release of not less than 5 years to life;

E. Mandatory restitution in an amount to be determined by the Court but not less than $3,000 per victim;[2]

F. Special Assessment Fee of $100.00 per count;

G. An AVAA Special Assessment Fee under 18 U.S.C. § 2259A of up to $17,000;[3]

H. Register in accordance with the Sex Offender Registration and Notification Act; and

I. Forfeiture.

---

[2] Pursuant to 18 U.S.C. § 2259(b)(2)(B), the court shall "order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000."

[3] 18 U.S.C. § 2259A(a)(2) provides that "[i]n addition to any other criminal penalty, restitution, or special assessment authorized by law, the court shall assess - …" not more than $17,000 on any individual convicted of possession of child pornography.

 Defendant's Initials JS

Case 5:25-cr-00269-CLM-HNJ Document 30 Filed 02/04/26 Page 4 of 25

## II. FACTUAL BASIS FOR PLEA

The Government is prepared to prove, at a minimum, the following facts at the trial of this case:

The defendant, Jason Brian SEAY, registered an account on the "Website"[4] where he posted and distributed child pornography. The Website operated over the Tor network.[5] Once law enforcement identified the provider of the IP address linked to SEAY's illegal activity on the Website, a subpoena was issued and the provider identified the subscriber as the defendant Jason Brian SEAY residing in Madison, Alabama. On March 6, 2025, a federal search warrant was obtained for SEAY's residence in Madison. The following day, the FBI executed the warrant and seized over 20 electronic devices, including a Dell XPS computer ("the desktop computer") and an external SanDisk solid state drive ("the SanDisk SSD").

A forensic review revealed that both the desktop computer and the SanDisk SSD employed BitLocker encryption. However, FBI forensic examiners were able to decrypt both devices and subsequently view the contents. A review of the desktop computer and SanDisk SSD revealed thousands of images and videos which depicted child pornography.

**Review of the Desktop Computer**

During a review of a virtual machine hard drive within the desktop computer, many child pornography videos were located that involved children who were 12 years of age or younger engaged in sexual acts with an adult male. A description of one of the videos is detailed below.

> The video was over eight minutes in length and depicted a female child, who appeared to be between three and five years old, with an adult male penis inserted into her mouth. The adult male made the child perform oral sex on him. About a couple of minutes later, the child was nude and again made to perform oral sex on the adult male. The adult male then pulled the child to the

[4] The name of this website is known to law enforcement but not specified here to protect operational security.

[5] The Tor network is a computer network designed to facilitate anonymous Internet communication by routing communications through a globally distributed network of relay computers operated by volunteers.

> end of the bed, spread her legs apart, and began rubbing his erect penis against the child's vagina. The adult male poured what appeared to be a lubricant on the child's vagina and began to penetrate her vagina with his erect penis shortly thereafter. Throughout the remainder of the video, the adult male penetrated the child's vagina and anus in different positions, until the adult male ejaculated.

**Review of the SanDisk SSD**

The Sandisk SSD was organized into several folders. Some folders contained one or more sub-folders. A review of these folders revealed surreptitious recordings of nude children produced by SEAY. In multiple videos, SEAY's face is in the recording, often when he sets up and manipulates the recording devices in rooms where a person would have a reasonable expectation of privacy and prior to a child entering the room to undress, bathe, or change clothes. SEAY had access to several minor children, including Minor Victim1 (MV1), Minor Victim2 (MV2), Minor Victim3 (MV3), Minor Victim4 (MV4), and Minor Victim5 (MV5).[6]

The primary folder "Modet" contained 24 videos. "Modet" had two sub-folders, named "New folder" and "Today". "Today" contained one additional video, and "New folder" contained the sub-folder "Video" which contained seven videos. There were 32 videos in total in the primary folder and sub-folders of "Modet". Videos contained within the folders had file names which appeared to reference dates. For example, several videos began with modet_2017-05-21_ then followed by different numbers. A review of the file properties indicated the files had modified dates of May 21, 2017. Some files possessed "(1)" after the file name, which often indicates they are copies of a file with the same file name.

**<u>Count One</u>**

The file named "modet_2017-05-21_12-20" contained an approximate 37 second video in length. This video appeared to be recorded by a camera on the floor of a bedroom in SEAY's house. In this video, SEAY was in the center of the room, and it appeared that he placed a black object on the floor. SEAY placed the device on the ground and then proceeded to walk out of the room. Across the top of the recording, the following banner is displayed, "IP Webcam Free Video Recording Remove this message by going Pro: http://goo.gl[redacted]." Based on this banner,

[6] The identities of these minor victims are known to law enforcement.

 Defendant's Initials JS

Case 5:25-cr-00269-CLM-HNJ Document 30 Filed 02/04/26 Page 6 of 25

it appeared that SEAY had logged into the camera to view it remotely or he was broadcasting the video for others to view remotely. Another video with the file name "modet_2017-05-21_12-22" depicted the same bedroom as previously described in the video with SEAY. In this video, a child who appeared to be approximately 14 years old (identified as MV3) entered the bedroom wearing black shorts and a dark colored t-shirt. MV3 dropped a backpack onto the floor and temporarily exited the frame of the camera for a second. When MV3 returned, she proceeded to remove her shorts with her back to the camera. In removing her underwear, she bent over, prominently displaying her buttocks and a portion of her genitals to the camera. This video was approximately one minute and 39 seconds in length.

**Count Two**

Another video in the "Modet" folder with file name "modet_2017-05-21_12-31" appeared to be taken on the same day as the previous video, involving MV3 because the backpack with the colored polka dots was in the same spot on the floor in the same bedroom. A younger female child (identified as MV1) entered the room wearing multi-colored pants with what appeared to be a bathing suit top. At approximately 34 seconds, MV1 turned to face the camera and took off her pants which exposed her vagina to the camera. She then proceeded to get dressed.

**Count Three**

One of the folders contained a series of videos with the same creation date of October 23, 2017, named MOVI0000, MOVI0001, MOVI0002, and MOVI0003. This series of videos appears to be a progression of events, starting with MOVI0000 and ending with MOVI0003. In MOVI0000, SEAY could be seen in front of the camera, manipulating what appeared to be a second camera, before then placing the second camera on the sink in his bathroom. At the end of MOVI0000, three prepubescent children who appeared to be under the age of 12 (identified as MV1, MV4, and MV5) were undressing in the bathroom. In MOVI0001 through MOVI0003, all three children were nude in the bathtub for approximately 28 minutes. While the children were playing in the bathtub, the children's pubic areas, chests, and buttocks were visible at various times. During this same time, SEAY was never visible to the camera. In these videos, the camera was covertly placed in the bathroom with its focal point aimed to record the children entering the bathtub and capturing the children's genitals and pubic area which clearly proves SEAY's intent to produce child pornography.

Case 5:25-cr-00269-CLM-HNJ Document 30 Filed 02/04/26 Page 7 of 25

**Count Four**

Within the primary folder "New folder-iz" of the Sandisk SSD, 23 additional child pornography videos were located. Like the MOVI0000 series described above, these 23 videos also appeared to be a series of videos capturing MV1 and MV2 bathing nude in SEAY's bathroom. In a video with the filename "modet_2018-01-06_18-41," SEAY entered the frame, and the video appeared to be coming from a device located on the floor of a closet. SEAY was holding another cell phone sized device in his hand and began moving around the closet and manipulated the recording device on the floor of the closet. SEAY appeared to be looking at the device in his hand as if he was testing the view from the recording device on the floor, because the position of the camera on the floor changed multiple times after SEAY looked at the device in his hand.

There was also a video with filename "modet_2018-01-06_19-41" (approximately 5 minutes in length) within "New folder-iz". Two minor females (MV1 and MV2) entered the frame of the camera, which appeared to be placed on a bathroom sink and focused on a bathtub and closet. Based on the date in the filename, MV1 and MV2 would be approximately nine and 13 years old, respectively. MV1 and MV2 undress. Although both children were nude, the area from their waist up was all that was visible due to the angle of the camera and the sink counter blocking the view. At approximately two minutes into the video, MV1 looked at the camera and said, "oh my god. Gosh. I mean. [SEAY's] phone is still in here." MV2 appears to gasp, and said, "he left his phone in here?"

In the same folder, a video with the filename rec_2018-01-06_20-38 was located, and was approximately four minutes and 34 seconds in length. The file properties on this video indicated that it was recorded on January 6, 2018, like the video with SEAY described above, because this video appeared to be captured from the floor of the same closet where SEAY was setting up a camera. In the video, a prepubescent female child, who appeared to be under 12 years of age, was standing in the nude with her breasts and vagina visible. This child was identified as MV1. The child then turned so her buttocks was visible. Approximately 23 seconds into the video, a second apparent minor child entered the closet. The second child (MV2) was not wearing any pants or underwear, and her buttocks was visible to the camera. The video then depicted both MV1 and MV2 getting dressed.

Consistent with the previously described videos, this recording appears to be a continuation of the recording described above, where MV1 and MV2 are bathing. SEAY set up two cameras—one to capture the children undressing and bathing then

 Defendant's Initials JS

Case 5:25-cr-00269-CLM-HNJ Document 30 Filed 02/04/26 Page 8 of 25

another camera in the closet to capture the children getting dressed. SEAY's acts of positioning two separate covert cameras in two private areas to capture MV1 and MV2 in the nude, regardless of where they undressed, proves his intent to produce child pornography.

**SEAY's Custodial Interview**

After SEAY was arrested on the federal complaint, he was *Mirandized* and agreed to speak with agents. SEAY was asked if he had ever sexually touched his daughter or any of her friends. SEAY replied in the negative. The agents then asked SEAY if he knew why they asked him that. SEAY replied that he did and said, "if I'm watching things that I shouldn't watch, then I'm probably acting on things, or a good percentage of people who would do that would act on it."

SEAY was not shown any of the child pornography, but he was shown three photos which were screen shots from some of the videos described above. The first photo was of SEAY, and he was asked if he could explain. SEAY said that the photo was from a video, and he identified that the individual in the photo was him. This photo had the banner across the top, and he was asked to explain. SEAY explained that the banner identified the program used which was an Android web cam, broadcasting from a phone. He said that the phone would broadcast a live stream which he could view. SEAY denied that he streamed the content of the recording to anyone else but himself. SEAY also admitted that he knew what happened in the rest of that video.

The second photo that was shown to SEAY depicted a bathroom in his residence. SEAY could not recall what happened in that video. The agent described it for SEAY and informed him it depicted three prepubescent females taking a bath. When asked what the purpose was for recording that video, (after a long pause) SEAY responded and explained that he was trying to keep an eye on them. SEAY denied that he recorded it for his sexual gratification.

The third photo shown to SEAY involved a minor female in SEAY's bathroom. SEAY was asked to identify the child. He said that it was MV2 and that she was probably about 13 or 14 years old when the video was recorded. SEAY explained that the recording was triggered by motion and was recorded by an old phone. When asked why the phone was there, SEAY provided various excuses: he listens to music in the shower, the phone is always there, it always records since triggered by motion, etc. When asked why there were no videos of SEAY showering



Defendant's Initials JS

Case 5:25-cr-00269-CLM-HNJ Document 30 Filed 02/04/26 Page 9 of 25

in the bathroom if it is always recording, SEAY explained that those videos never were saved. When asked again why he recorded that video of MV2, SEAY responded, "I wanted to see her boobs."

The agent described another video involving a minor female that had not been identified and asked SEAY if he would provide her name. SEAY said that he knew which video the agent was referring to and identified the child as Minor Victim6 (MV6). SEAY explained that he knew her parents. When asked if he had ever set up hidden cameras at their house, SEAY initially said that he did not think he did. However, when asked how confident he was that he did not set up cameras, SEAY replied, "I'm not."

SEAY admitted to using the dark web via the Tor browser and downloading most of the child pornography that he possessed. He said the last time he used Tor to navigate to a website for child pornography was the day before the FBI executed the search warrant at his residence. SEAY said that he started viewing child pornography about 10 years ago and that he started surreptitiously recording CSAM videos around 2016 or 2018. He also admitted to taking "upskirt" videos. When asked if there were any other victims from SEAY's actions, SEAY replied, "there are no victims." When the agent explained that the child victims were very sad and upset, SEAY said, "Well I mean they weren't victims, no one knew."

SanDisk SSDs are manufactured in China, Taiwan, Malaysia, and Vietnam. Dell XPS computers are manufactured in Mexico. Telephones and cellular telephones are instrumentalities of interstate commerce, even when they are used intrastate. *United States v. Evans*, 476 F.3d 1176, 1180-81 (11th Cir. 2007).

**The defendant expressly admits that he knowingly produced child pornography, coerced and enticed a minor, and traveled with the intent to engage in illicit sexual activity with a minor. The defendant further stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence. The defendant further**



Defendant's Initials JS

**acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.**

**JASON BRIAN SEAY**

## III. RECOMMENDED SENTENCE

Subject to the limitations in section **VII** regarding subsequent conduct and pursuant to Fed. R. Crim. P. 11(c)(1)(B), the Government will recommend the following disposition:

A. That the defendant be awarded a two (2) level reduction in the defendant's adjusted offense level, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct. The Government agrees to make a motion pursuant to USSG §3E1.1(b) for an additional one-level decrease in recognition of the defendant's prompt notification to the Government of the intention to enter a plea of guilty. The Government may oppose any adjustment for acceptance of responsibility if the defendant: (1) fails to admit each and every item in the factual stipulation; (2) denies involvement in the offense; (3) gives conflicting statements about the defendant's involvement in the offense; (4) is untruthful with the Court, the Government, or the United States Probation Officer; (5) obstructs or attempts to obstruct justice prior to sentencing; (6) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (7) attempts to withdraw the defendant's plea of guilty for any reason other than those expressly enumerated in the "Waiver of Right to Appeal and Post-Conviction Relief" section of this Plea Agreement;

B. That the defendant be remanded to the custody of the Bureau of Prisons and incarcerated for a term **WITHIN** the advisory United States Sentencing Guideline range as calculated by the Court at the time of sentencing;

 Defendant's Initials JS

C. That following the said term of imprisonment, the defendant be placed on **supervised release for a term of life**, subject to the standard conditions of supervised release as set forth in U.S.S.G § 5D1.3, and to the following special conditions:

a. That the defendant be required to be registered as a sex offender for the full term of his supervised release or for the full term provided for under the law of the jurisdiction he chooses as his domicile, whichever is longer;

b. That the defendant not have contact with any child under the age of 18, without the presence of an adult and approved in advance by the Probation Officer. This includes prohibiting the defendant from having any contact with any child by telephone or the Internet. The defendant shall immediately report any unauthorized contact with minor-aged children to the Probation Officer;

c. That the defendant complete a sex offender evaluation, which may include periodic psychological, physiological, polygraph, and plethysmography testing at the direction of the Probation Officer;

d. That the defendant participate and successfully complete an approved state-certified sex offender treatment program, including compliance with all lifestyle restrictions and treatment requirements of the program. The defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. The defendant shall contribute to the cost of treatment according to the defendant's ability to pay;

e. That the defendant shall initially register with the state sex offender registration agency in Alabama according to Alabama state law and shall also register with the state sex offender registration agency according to the law of any state in which the defendant resides, is employed, or is attending school. The defendant shall comply with all requirements of federal and state sex offender registration

 Defendant's Initials JS

laws, including the requirement to update his registration information. The defendant shall provide proof of registration to the Probation Officer within 72 hours of release from imprisonment; and

f. That the defendant be prohibited from using any computer, or any other device, with Internet access, unless approved in advance by the Probation Officer, or required for employment. If approved by the Probation Officer, or required for employment, the defendant must allow the Probation Officer or designee to conduct random inspections, including retrieval and copying of data from any computer, and any personal computing device that the defendant possesses or has access to, including any internal or external peripherals. This may require temporary removal of the equipment for a more thorough inspection. The defendant shall not possess or use any data encryption technique or program. According to the defendant's ability to pay, the defendant shall purchase and use such hardware and software systems that monitor the defendant's computer usage, if directed by the Probation Officer.

D. That the defendant be required to pay restitution to all victims, if applicable, and that the defendant have no contact with the victims;

E. That the defendant be required to pay a fine in accordance with the sentencing guidelines should the Court determine that the defendant has the ability to pay a fine, said amount due and owing as of the date sentence is pronounced, with any outstanding balance to be paid in full by the expiration of the term of supervised release;

F. That the defendant be required to comply with the forfeiture provisions set forth in section **XII** of this agreement;

G. That the defendant pay a special assessment of $100 per count, said amount due and owing as of the date sentence is pronounced; and

H. That the defendant pay an AVAA special assessment per count of conviction.

 Defendant's Initials_______

I. Should the Government learn that the defendant has sexually abused or assaulted any minor or committed any other crime of violence or if any other victim should come forward prior to the defendant's sentencing, this agreement will be considered **NULL AND VOID**.

## IV. WAIVERS

A. STATUTE OF LIMITATIONS WAIVER

**In consideration of the recommended disposition of this case, I, JASON BRIAN SEAY, hereby understand, acknowledge, and agree that if this plea agreement is set aside for any reason, I will not assert any defense based on any applicable statute of limitations or the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, that includes the passage of time from and including the date of this plea agreement until and including the date of entry of any order setting this plea agreement aside.**

B. RIGHT TO APPEAL AND POST-CONVICTION RELIEF

**In consideration of the recommended disposition of this case, I, JASON BRIAN SEAY, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the Court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction**

 Defendant's Initials JS

proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255, and any argument that (1) the statute(s) to which I am pleading guilty is or are unconstitutional or (2) the admitted conduct does not fall within the scope of the statute(s).

The defendant reserves the right to contest in an appeal or post-conviction proceeding(s) the following:

1. Any sentence imposed in excess of the applicable statutory maximum sentence(s);
2. Any sentence imposed in excess of the Guidelines range determined by the Court at the time sentence is imposed; and
3. Ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the defendant discussed the United States Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the Government retains its right to appeal where authorized by statute.

I, JASON BRIAN SEAY, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

[signature]
JASON BRIAN SEAY

## V. UNITED STATES SENTENCING GUIDELINES

The defendant's counsel has explained to the defendant, that in light of the United States Supreme Court's decision in *United States v. Booker*, the federal sentencing guidelines are **advisory** in nature. Sentencing is in the Court's discretion and is not required to be within the guideline range. The defendant agrees that, pursuant to this agreement, the Court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and the defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VI. AGREEMENT NOT BINDING ON COURT

The defendant fully and completely understands and agrees that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the Government is **NOT BINDING UPON THE COURT,** and that the Court is not required to accept the Government's recommendation. Further, the defendant understands that if the Court does not accept the Government's recommendation, the defendant does not have the right to withdraw the guilty plea.

## VII. VOIDING OF AGREEMENT

The defendant understands that if the defendant (a) violates any federal, state, or local law or any condition of pretrial release after entering into this plea agreement, (b) moves the Court to accept a plea of guilty in accordance with, or pursuant to, the provisions of *North Carolina v. Alford*, 400 U.S. 25 (1970),

Case 5:25-cr-00269-CLM-HNJ Document 30 Filed 02/04/26 Page 16 of 25

(c) tenders a plea of *nolo contendere* to the charges, (d) violates any other term of this plea agreement, and/or (e) does or says anything that is inconsistent with the acceptance of responsibility, the plea agreement will become NULL and VOID at the election of the United States, and the United States will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein. Further, such election will not entitle the defendant to withdraw a previously entered plea.

## VIII. OTHER DISTRICTS AND JURISDICTIONS

The defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## IX. COLLECTION OF FINANCIAL OBLIGATION

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to:

- fully disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party;
- promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs;
- identify all assets over which the defendant exercises or exercised control,

directly or indirectly, within the past five years, or in which the defendant has or had during that time any financial interest;

- take all steps as requested by the Government to obtain from any other parties by any lawful means any records of assets owned at any time by the defendant;
- undergo any polygraph examination the Government may choose to administer concerning such assets and to provide and/or consent to the release of the defendant's tax returns for the previous five years.

The defendant further agrees that the above information, as well as any of the defendant's financial statements and disclosures, will be complete, accurate, and truthful. Finally, the defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

## X. AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION

As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts. The defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the defendant's range of punishment under the advisory sentencing guidelines. The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct.

 Defendant's Initials JS

This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors, which may constitute or relate to relevant conduct. Additionally, if this agreement contains any provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any and waives objection to the inclusion of that restitution in any order issued by the Court.

## XI. TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS

Unless otherwise specified herein, the defendant understands and acknowledges that this agreement does not apply to or in any way limit any pending or prospective proceedings related to the defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

## XII. FORFEITURE

The defendant agrees to consent to the immediate entry of a final forfeiture judgment against the defendant, pursuant to Fed. R. Crim. P. 32.2(b)(1), of all property involved in or used in the commission of the offense in the indictment, including but not limited to, the **Google cell phone; Insignia hard drive; Kangaroo minicomputer (model MD2B); Western Digital hard drive (Serial #WCAUH0690982); Seagate 320GB hard drive (Serial #6VD3LSXL); Dell**

 Defendant's Initials JS

**Inspiron (Serial # 82LCMX3); Rezound phone (IMEI 990000339710669); Sandisk solid state drive (Serial # 153804400991); WD hard drive (Serial # WXH708342099); 2.5 SATA HD half case; black Lexar 1GB USB; black Google flip phone; silver hard drive (model #PHR-250A); Dell XPS CPU (Serial #5391273638); Western Digital hard drive (Serial #WMAMC3422923); grey Google phone; black Toshiba laptop; silver Acer laptop; Asus Nexus tablet; Galaxy J7V; Galaxy Note 5; Verizon LG phone; Google phone; and Apple iPad (Serial #DMPL8C3BF182).** For purposes of entering said order of forfeiture, the defendant acknowledges that a nexus exists between the property listed above and the criminal offense(s) to which the defendant is pleading guilty.

The defendant agrees to take all steps as requested by the Government to pass clear title to forfeitable assets to the Government, and to testify truthfully in any judicial forfeiture proceeding. The defendant hereby waives the requirements of Fed. R. Crim. P. 32.2 regarding notice of the forfeiture in the Indictment announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant also waives the requirements of Fed. R. Crim. P. 43(a) with respect to the imposition of any forfeiture sanction carried out in accordance with this plea agreement. The defendant acknowledges that the defendant understands that the forfeiture of assets is part of the sentence that may be imposed

 Defendant's Initials JS

in this case and waives any failure by the Court to advise the defendant of this pursuant to Fed. R. Crim. P. 11(b)(1)(J), at the time the defendant's guilty plea is accepted.

The defendant further waives all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including any Double Jeopardy challenges that the defendant may have to the entry of a Forfeiture Order before sentencing, and any claims, defenses or challenges arising under the Excessive Fines Clause of the Eighth Amendment resulting from the forfeiture imposed as a result of this Indictment and/or any pending or completed administrative or civil forfeiture actions based upon the course of conduct that provides the factual basis for the forfeiture.

**Non-Abatement of Criminal Forfeiture**

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon the defendant's heirs, successors, and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full. To the extent



Defendant's Initials JS

that forfeiture pursuant to this agreement requires the defendant to disgorge wrongfully obtained criminal proceeds for the benefit of the defendant's victims, the defendant agrees that the forfeiture is primarily remedial in nature.

## XIII. GENERAL ABANDONMENT OF EVIDENCE AND PROPERTY

The defendant agrees to forfeit and abandon any right to all evidence and property seized during this investigation (including, but not limited to, any item subject to forfeiture as referenced in Section **XII**, above) (hereinafter referred to as the "Property") and waives any right to seek the return of the Property pursuant to Federal Rule of Criminal Procedure 41 or otherwise.

The defendant understands that the defendant has the right and opportunity to claim the Property. However, the defendant hereby knowingly and voluntarily waives all right, title, and interest in the Property. The defendant waives, releases, and withdraws any claim that the defendant has made with respect to the Property, and waives and releases any claim that the defendant might otherwise have made to the Property in the future.

Finally, the defendant understands and agrees that the Property will be destroyed or otherwise disposed of by the seizing law enforcement agency. The defendant agrees to hold the United States of America, its agents, and employees, harmless from any claim(s) that may, have, or could arise in connection with the seizure, abandonment, disposition, and destruction of the Property.

 Defendant's Initials JS

Case 5:25-cr-00269-CLM-HNJ Document 30 Filed 02/04/26 Page 22 of 25

## XIV. IMMIGRATION STATUS

The defendant recognizes that pleading guilty may have consequences wit respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the defendant is pleading guilty. The defendant's guilty plea and conviction make it practically inevitable and a virtual certainty that the defendant will be removed or deported from the United States if the defendant is not a citizen of the United States. Removal and other immigration consequences are the subject of a separate proceeding, however; and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Understanding all of this, the defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that plea may entail, even if the consequence is automatic removal from the United States.

## XV. SEX-OFFENDER REGISTRATION

The defendant understands that by pleading guilty, defendant will be required to register as a sex offender upon his release from prison as a condition of supervised release pursuant to Title 18 U.S.C. § 3583(d) and this Plea Agreement. The defendant also understands that, independent of supervised release, he will be subject to federal and state sex-offender-registrant requirements, and that those



Defendant's Initials JS

requirements may apply throughout his life and may be initiated by the entering of his plea of guilty or a finding of guilt, regardless of whether a sentence has been imposed or adjudication has been withheld. The defendant understands that he shall keep his registration current, shall notify the state sex-offender registration agency or agencies of any changes to defendant's name, place of residence, employment, or student status, or other relevant information. The defendant shall comply with requirements to periodically verify in person his sex-offender registration information. The defendant understands that he will be subject to possible federal and state penalties for failure to comply with any such sex-offender registration requirements. If defendant resides in Alabama prior to incarceration or following release from prison, he will be subject to the registration requirements of Alabama Code §§ 15-20A-1, et seq., 13A-11-200, et seq., and other relevant Alabama law, which includes a registration requirement after a plea of finding of guilt. The defendant further understands that, under Title 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon defendant's release from confinement following conviction.

## XVI. DEFENDANT'S ACKNOWLEDGEMENT

I have read and understand the provisions of this plea agreement consisting of **25** pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand

Case 5:25-cr-00269-CLM-HNJ Document 30 Filed 02/04/26 Page 24 of 25

that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence on my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO PROMISES OR REPRESENTATIONS OTHER THAN THOSE IN THE AGREEMENT HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here:

None ________________________________________.

(If none, please state "none")

I understand that this plea agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this plea agreement and have signed the signature line below to indicate that I have read, understand, and approve all the provisions of this plea agreement, both individually and as a total binding agreement.

1-15-26
DATE

[signature]
**JASON BRIAN SEAY**
Defendant

Case 5:25-cr-00269-CLM-HNJ Document 30 Filed 02/04/26 Page 25 of 25

## XVII. COUNSEL'S ACKNOWLEDGMENT

I have discussed this case with my client in detail and have advised my client of all of my client's rights and all possible defenses. My client has conveyed to me that my client understands this plea agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment. I concur in the entry of the plea agreement on the terms and conditions set forth herein.

1-7-26
DATE

ROBERT TUTEN
Defendant's Counsel

## XVIII. GOVERNMENT'S ACKNOWLEDGMENT

I have reviewed this matter and this plea agreement and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

PRIM F. ESCALONA
United States Attorney

2/4/2026
DATE

R. LEANN WHITE
Assistant United States Attorney



Defendant's Initials CS